## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERI L. DIMOFF, | : | |
| Plaintiff | : | No. 1:22-cv-00072 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| TROOPER LUCAS AMAROSE and | : | |
| TROOPER CONOR TREMAINE | : | |
| Defendants | : | |

### MEMORANDUM

This action arises from claims of excessive force and failure to intervene pursuant to 42 U.S.C. § 1983 related to the arrest and subsequent transport and escort of Plaintiff Jeri L. Dimoff ("Plaintiff") by Trooper Lucas Amarose ("Amarose") and Trooper Conor Tremaine ("Tremaine"), collectively referred to as "Defendants" or "troopers."  Before the Court is Defendants' motion for summary judgment.  (Doc. No. 29.)  For the following reasons, the Court will grant in part and deny in part the motion.

## I.      BACKGROUND

### A.      Factual Background[1]

---

[1]   Unless otherwise noted, the following relevant facts of record are undisputed.  The facts are taken from Defendants' statement of material facts ("SMF") (Doc. No. 31), exhibits attached to the SMF (Doc. Nos. 31-2 through 31-6), and the available motor vehicle recording ("MVR") (Doc. No. 32).  The exhibits attached to the SMF are as follows: Amarose's Pennsylvania State Police General Offense Report ("General Offense Report") (Doc. No. 31-2); Amarose's deposition transcript (Doc. No. 31-3); Tremaine's deposition transcript (Doc. No. 31-4); Plaintiff's deposition transcript (Doc. No. 31-5); and Plaintiff's booking photograph (Doc. No. 31-6).  Citations to the MVR are to the military timestamp embedded in the video and captioned on the screen.  See (Doc. No. 32).  The time is displayed in [hh:mm:ss] format.

In connection with their response to Defendants' SMF, Plaintiff filed a counter statement of facts ("CSMF") (Doc. No. 39), to which Defendants filed a response (Doc. No. 40-1).  As noted by Defendants in their reply brief, the Local Rules of this Court do not authorize a non-moving party to file a statement of facts in connection with a motion for summary judgment.  (Doc. No. 40 at 8.)  The Court agrees with Defendants that Plaintiff's CSMF does not comply with Local Rule 56.1, which contemplates only that a party opposing a motion for summary judgment file a

### 1.    Traffic Stop

On January 26, 2020, at approximately 12:10 a.m., Defendants pulled Plaintiff's vehicle over, after observing Plaintiff cross the center line of the road, in Franklin County, Pennsylvania. (Doc. No. 31 ¶ 5.)  According to Amarose's Pennsylvania State Police General Offense Report ("General Offense Report"), Plaintiff's vehicle was pulled over at the intersection of Kohler Road and Grand Point Road in Greene Township, Pennsylvania.  (Doc. No. 31-2 at 4.)  At the time, Defendants were employed by the Pennsylvania State Police in Chambersburg, Pennsylvania.  (Doc. No. 31 ¶ 4.)  Defendants were on routine patrol when they pulled Plaintiff's vehicle over.  (Doc. No. 31-2 at 9.)  Amarose, the "arresting officer" or "contact officer,"[2]

---

statement of facts "responding to the numbered paragraphs set forth" in the moving party's statement of facts.  See L.R. 56.1.  Plaintiff did not provide a response to each numbered paragraph in Defendants' SMF, and instead reiterated many of Defendants' facts and added new assertions.  The Court, therefore, will disregard Plaintiff's CSMF in connection with its consideration of Defendants' motion pursuant to Local Rule 56.1.  See Sash v. Hosten, No. 07-cv-00475, 2009 WL 249649, at *2 (M.D. Pa. Feb. 2, 2009) (providing that Local Rule 56.1 "does not provide for a non-moving party to file his own statement of material facts but instructs the nonmoving party how to properly respond to the movant's statement of material facts"); Dreibelbis v. Young, No. 06-cv-02055, 2007 WL 4344120, at *2 (M.D. Pa. Dec. 10, 2007) (stating that "based on the plain language of Local Rule 56.1, Plaintiff's filing of his own Motion and Statement of Material Facts is not technically sufficient to either oppose Defendants' Motion or deny Defendants' Statement of Material Facts.").  The Court deems Defendants' SMF admitted in its entirety.

While Plaintiff's CSMF is not directly responsive to Defendants' SMF, the Court may consider the entire record to ascertain the relevant factual background for this matter, but the Court will assign Plaintiffs' CSMF no evidentiary value.  See Rau v. Allstate Fire & Cas. Ins. Co., No. 16-cv-00359, 2018 WL 6422121, at *2 (M.D. Pa. Dec. 6, 2018); Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Associates, 39 F. Supp. 2d 517, 519 n.1 (M.D. Pa. 1999).  Plaintiff did, however, attach exhibits to her CSMF (Doc. Nos. 39-1 through 39-4), all of which were already submitted by Defendants or is a copy of a previous pleading.  Docket Numbers 39-2 through 39-4 are the depositions of Plaintiff, Tremaine, and Amarose (docketed at Docket Numbers 31-3 through 31-5)), and Docket Number 39-1 is a copy of Plaintiff's complaint, which is docketed at Docket Number 1.

[2]   As the arresting officer, Amarose did most of the reporting associated with the arrest and incident.  See (Doc. No. 31-3 at 15, Tr. 48:10–17).

approached Plaintiff's vehicle.  See (Doc. Nos. 31 ¶ 7; 31-3 at 15, Tr. 48:11–24).  Tremaine was

the "cover officer" and stayed near Defendants' police vehicle for "tactical advantage."  (Doc.

No. 31-1at 15, Tr. 48:19–49:23.)  Amarose observed Plaintiff and her 11-year-old son in the

vehicle.  (Doc. No. 31 ¶ 7.)  Plaintiff's son was crying and upset in the front seat of the vehicle.

(Id.)  There was also a scared dog in the vehicle.  See (Doc. Nos. 31-3 at 17, Tr. 55:8–14; 31-5 at

8–9, Tr. 21:12–24:3).  Plaintiff did not have her license on her person and PennDOT records

later indicated that Plaintiff's license was expired.  (Doc. Nos. 31 ¶ 8; 32 at 00:12:00.)  The

General Offense Report states that Amarose detected a strong odor of alcohol on Plaintiff's

breath, observed her eyes as bloodshot and glassy, and observed three unopened Miller Lite cans

in the front seat.  (Doc. No. 31-2 at 9.)

　　　When approached, Plaintiff acknowledged that she had been drinking that evening, and

Amarose asked her to step out of the vehicle to make sure she was safe to drive.  (Doc. Nos. 31

¶¶ 9–10; 32 at 00:12:08.)  Plaintiff, during this interaction, identified her husband as a police

officer.  (Doc. Nos. 31 ¶ 11; 32 at 00:12:38.)  Plaintiff was then asked by Amarose to sit on the

front of the police vehicle parked behind her vehicle.  (Doc. Nos. 31 ¶ 12; 32 at 00:12:45.)

### 2.    Sobriety Tests

　　　After Plaintiff sat on the front of the police vehicle, Amarose conducted the Horizontal

Nystagmus ("HGN") sobriety test.[3]  (Doc. Nos. 31 ¶ 14; 32 at 00:13:30–00:15:20.)  Amarose

showed Plaintiff how to perform the next test, the "walk turn" test.  (Doc. Nos. 31 ¶ 15; 32 at

00:15:20–00:16:20.)  Amarose asked Plaintiff if she had any disability that may prevent her from

completing the "walk turn" test.  (Doc. Nos. 31 ¶ 16; 32 at 00:16:20.)  Plaintiff responded,

---

[3]  Nystagmus is an involuntary jerking of the eyeball that may result from alcohol or other
drugs.

"[b]esides not having my glasses on, no."  (Doc. Nos. 31 ¶ 17; 32 at 00:16:25.)  Plaintiff was

asked to, and did, complete the test.  (Doc. Nos. 31 ¶ 18; 32 at 00:16:40–00:17:13.)  The third

test conducted was the "raised leg and count."  (Doc. Nos. 31 ¶ 19; 32 at 00:18:05–00:18:40.)

Amarose asked Plaintiff to complete the test.  (Doc. Nos. 31 ¶ 20; 32 at 00:18:45–00:19:15.)

There was a disagreement as to whether Plaintiff was completing the test properly, and in

response, Tremaine told Plaintiff that, if she did not cooperate, the troopers would put handcuffs

on her.  (Doc. Nos. 31 ¶ 21; 32 at 00:19:20–00:19:24.)  The fourth and final test was the

breathalyzer test.  (Doc. Nos. 31 ¶ 22; 32 at 00:19:30.)  Plaintiff's preliminary result was .144%

Blood Alcohol Content ("BAC").  (Doc. Nos. 31 ¶ 23; 32 at 00:20:00.)  The breath test was a

partial reading because, according to Amarose, Plaintiff was not providing a full breath and he

believed Plaintiff was intentionally trying to give an incorrect reading.  (Doc. No. 31 ¶ 24.)

Once the tests were completed, Amarose determined—based on his training, experiences,

and the totality of the circumstances—that Plaintiff "could not safely operate a vehicle due to her

level of impairment."  (Doc. No. 31-2 at 9.)  Both troopers began to order Plaintiff to turn

around.  (Doc. Nos. 31 ¶ 25; 32 at 00:20:00; 40-1 ¶ 27.)

### 3.    Alleged Use of Excessive Force

It is undisputed that, no more than two (2) seconds after being instructed to turn around,

Plaintiff was physically turned around by Defendants.  (Doc. No. 32 at 00:20:00–00:20:08.)

Both troopers recalled that they were able to feel Plaintiff's arms and muscles tense up as they

turned her around.  (Doc. No. 31 ¶¶ 26–27.)  The "balling of fists and tensing of the body" are

considered "pre-assault indicators" in State Trooper training.[4]  (Doc. Nos. 31 ¶ 47; 31-4 at 29,

---

[4]   According to Amarose, this sign of tensing in the body indicates a "fight or flight mentality."
See (Doc. No. 31-3 at 20, Tr. 68:1–4).

4

Tr. 104:9–21.)  Because he felt Plaintiff tense her arm and saw her ball her fist, Tremaine then took Plaintiff to the ground via armbar in order to take her into custody.  (Doc. No. 31 ¶¶ 26–31.) Amarose was not surprised by this because he himself had been preparing to take Plaintiff to the ground.  (Id. ¶¶ 29–30.)

Both troopers indicated that it was their impression that Plaintiff was fighting/resisting arrest and was uncooperative.  (Id. ¶ 31.)  Tremaine did not intend to harm Plaintiff by taking her to the ground.  (Id. ¶ 32.)  Defendants are trained by the State Police in the use of force.  (Id. ¶¶ 42–43.)  The use of force is described in a wheel or array "with the presence of an officer being the least amount of force one can use to deadly force being the most force used."  See (id. ¶ 45) (referencing Doc. No. 31-3 at 8, Tr. 18:1–20:14).

After Tremaine brought Plaintiff to the ground, Amarose put handcuffs on her.  (Doc. No. 31 ¶ 33.)  Plaintiff suffered injury to her lip, her front tooth crown became mobile, and she had abrasions on her face.  (Id. ¶ 34.)

### 4. Plaintiff's Arrest

Tremaine put Plaintiff in the back of the police vehicle.  (Doc. Nos. 31 ¶ 35; 32 at 00:20:35.)  Amarose spoke with Plaintiff's son and contacted the boy's father, who arrived to take him home.  (Doc. Nos. 31 ¶ 36; 32 at 00:21:00–00:43:45.)

While Tremaine placed Plaintiff's seatbelt on in the police vehicle, Plaintiff spit on Tremaine.  (Doc. No. 31 ¶ 37.)  Plaintiff continued to spit blood on the seat, door, and window of the vehicle during her transport.  (Id. ¶ 38.)

Defendants first took Plaintiff to a local hospital for blood testing, where her blood draw was recorded as .165% BAC.  (Doc. Nos. 31 ¶ 39; 31-2 at 10.)  Plaintiff was then taken to the Chambersburg Barracks for processing.  (Doc. Nos. 31 ¶¶ 40–41; 32 at 00:46:50.)  Plaintiff was

then taken to Franklin County Jail ("Franklin CJ").  (Doc. Nos. 31 ¶ 41; 31-2 at 9–10.)  The only available photograph of Plaintiff's injuries is Plaintiff's booking photograph at the jail.[5]  (Doc. No. 31 ¶ 42.)

The police criminal complaint states that Plaintiff violated 75 Pa. C.S.A. § 3802(a)(1) and 75 Pa. C.S.A. § 3802(c),[6] among other things.  (Doc. No. 31-2 at 13–18.)  Plaintiff pleaded guilty to 75 Pa. C.S.A. § 3802(c) (a "DUI: Highest Rate of Alcohol")[7] and was sentenced to six (6) months' probation.  (Id. at 27.)

### B.    Procedural Background

On January 13, 2022, Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 against multiple defendants.  (Doc. No. 1.)  Upon agreement of the parties (Doc. No. 13) and the approval of the Court (Doc. No. 16), this action continued against only Amarose and Tremaine in their individual capacities.  The only remaining claims of Plaintiff's complaint are: (1) individual-capacity Fourth Amendment excessive force claims against Amarose and Tremaine (Count I) for use of excessive force "when inexplicably forcing the Plaintiff onto the ground and into the side of the police cruiser multiple times on the date of the incident in question"; and (2) individual-capacity Fourth Amendment failure-to-intervene claims against Amarose and

---

[5]  As stated supra at note 1, the booking photograph is docketed at Docket Number 31-6.

[6]  These are sections of the Pennsylvania driving under the influence statute.  See 75 Pa. C.S.A. § 3802.

[7]  Under the "highest rate of alcohol" offense,

> [a]n individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

See 75 Pa. C.S.A § 3802(c).

Tremaine (Count III) for failure to intervene to limit or stop other Defendants from engaging in excessive force.  (Doc. Nos. 1 ¶¶ 109, 123–24; 13 at 3, 16 at 1–2.)

After a post-discovery telephone conference with this Court (Doc. No. 26), Defendants filed a motion for summary judgment on Count I and Count III on September 5, 2023 (Doc. No. 29).  On September 5, 2023, Defendants also filed a brief in support of their motion, their SMF, and relevant exhibits.  (Doc. Nos. 30–32.)  On October 2, 2023, Plaintiff filed her response to Defendants' motion, her brief in opposition, and her CSMF.  (Doc. Nos. 37–39.)  Defendants filed a reply brief on October 16, 2023, which includes a response to Plaintiff's CSMF, as discussed <u>supra</u>.  (Doc. Nos. 40, 40-1.)

On October 24, 2023, Plaintiff filed a sur-reply brief (Doc. No. 41) without leave of court, as required by Local Rule 7.7.  <u>See</u> L.R. 7.7 ("[n]o further briefs may be filed without leave of court").  Approximately a week later, on November 3, 2023, Plaintiff filed a Motion for Leave to File Sur-Reply Brief in Response to Defendants' Supplemental Brief (Doc. No. 42), with a certificate of nonconcurrence (Doc. No. 42-1) and a proposed order (Doc. No. 42-2).  The motion was not accompanied by a brief.  Local Rule 7.5 provides, in relevant part, that "[w]ithin fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion . . . .  If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to be withdrawn."  <u>See</u> L.R. 7.5.  The Court's review of the docket in this matter reveals that Plaintiff did not file a brief in support of the motion within the fourteen-day period, which expired on November 17, 2023.  Accordingly, the Court deems Plaintiff's motion for leave to file a sur-reply brief withdrawn.  The motion for summary judgment is now ripe for disposition.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  See id. at 251–52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  See Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative.  See Anderson, 477 U.S.

at 249–50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  See id. at 252.

When there is videotaped evidence in the record, the court is obliged to consider it when determining whether there is a genuine dispute of material fact, and the Court must view the facts in the light depicted by the videotape.  See Scott v. Harris, 550 U.S. 372, 380–81 (2007); see also El v. City of Pittsburgh, 975 F.3d 327, 333 (3d Cir. 2022) (stating, in the context of the review of a denial of summary judgment based on qualified immunity, that if "there is a video in the record 'capturing the events in question,' we must accept the trial court's factual determinations unless they are 'blatantly contradicted' by the video").

## III.    DISCUSSION

Defendants move for summary judgment on both of Plaintiff's remaining claims—for excessive force (Count I) and for failure to intervene (Count III)—against each individual Defendant.  The Court will first discuss Count I, which concerns the alleged excessive use of force (1) during Plaintiff's traffic stop and subsequent arrest for driving under the influence and (2) during Defendants' escorting of Plaintiff in the barracks parking lot.[8]  (Doc. No. 1 ¶ 109.)  Count III concerns claims of failure to intervene to limit or stop the Defendant from engaging in excessive force.  (Id. ¶¶ 123–24.)  While Plaintiff does not articulate Count III with the same specificity as Count I (in the circumstances under which Defendants allegedly failed to intervene), the Court will analyze Count III in connection with two alleged excessive uses of

---

[8]  Plaintiff's complaint describes the two instances as occurring "when [Defendants] inexplicably forc[ed]the Plaintiff onto the ground and into the side of the police cruiser multiple times on the date of the incident in question."  (Doc. No. 1 ¶ 109.)  Plaintiff alleges that Defendants forced her into the side of the police cruiser while they escorted her through the barracks parking lot—therefore, the Court will refer to this instance throughout as the "escort of Plaintiff" for the ease of reference.

force because logic (and the law) dictate that there cannot be a viable claim for failure to intervene to stop excessive force without an alleged use of excessive force.  For each claim, the Court will first discuss the applicable legal standard and the arguments of the parties before analyzing the two alleged uses of force and each Defendants' involvement in those alleged uses.

### A.   Plaintiff's Fourth Amendment Claims of Excessive Force (Count I)[9]

#### 1.   Applicable Legal Standards

##### a.   Claims Asserted Pursuant to 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284–85 (2002)).  To maintain a cause of action under Section 1983, a plaintiff must demonstrate that:

---

[9]   While Count I of Plaintiff's complaint asserts a cause of action for "excessive force" in violation of the Fourth and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983 (Doc. No. 1 ¶¶ 107–08), Plaintiff's brief in opposition to Defendant's motion does not appear to refer to any type of Fourteenth Amendment violation.  (Doc. No. 38.)  Accordingly, the Court considers Count I as alleging only a Fourth Amendment violation.  To the extent Plaintiff refers to the Fourteenth Amendment for purposes of the application of the Fourth Amendment to actions on the part of a state, the Court recognizes that the Fourth Amendment applies to conduct of state officials by operation of the Fourteenth Amendment.  See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

(1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### b.  Claims of Excessive Force

Police officers are privileged to commit a battery incident to a lawful arrest.  See Edwards v. City of Philadelphia, 860 F.2d 568, 572 (3d Cir. 1988).  A claim for the use of excessive force is "analyzed under the Fourth Amendment's objective reasonableness standard." See Graham v. Connor, 490 U.S. 386, 388 (1989).  When analyzing an excessive force claim, "the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  Graham, 490 U.S. at 396 (internal quotations omitted).  Reasonableness must "embody allowance for the fact that police officers are forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  See id. at 396–97.  "Reasonableness must be evaluated from the 'perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight.'"  Brogan v. Tunkhannock Township, 302 F. Supp. 3d 670, 676 (M.D. Pa. 2018) (citing Graham, 490 U.S. at 396).

"[T]he question whether the use of force is 'objectively reasonable' is determined by analyzing several factors."  Estate of Smith v. Marasco, 430 F.3d 140, 149 (3d Cir. 2005).  Some of these factors are illustrated in Graham ("the Graham Factors"), including "the severity of the crime at issue"; "whether the suspect poses an immediate threat to the safety of the

officers or others"; and "whether the suspect is actively resisting arrest or attempting to evade by flight." See Graham, 490 U.S. at 396.  While the issue of reasonableness is a question of fact usually reserved for the jury, summary judgment may be entered if the court "resolves all factual disputes in favor of the plaintiff and concludes that the use of force was objectively reasonable under the circumstances." See Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999) (quoting Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994)).  The court must also consider the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation" when evaluating reasonableness.  See Graham, 490 U.S. at 397.  "'[T]he 20/20 vision of hindsight' should not apply, and the court should instead consider the 'perspective of a reasonable officer on the scene.'"  Id. at 396.

### c.      Qualified Immunity

"Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007) ("Curley II").  "Qualified immunity 'gives ample room for mistaken judgments' by shielding 'all but the plainly incompetent or those who knowingly violate the law.'"  Olson v. Ako, 724 F. App'x 160, 164 (3d Cir. 2018) (unpublished) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  "This accommodation recognizes [the] societal interest in law enforcement's pursuit of investigations unconstrained by the constant fear of being sued."  Id. (citing Hunter v. Bryant, 502 U.S. 224, 229 (1991)).  Consequently, an official is qualifiedly immune unless "the official violated a statutory or constitutional right," and "the right was 'clearly established' at the time of the challenged conduct."  See Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "Courts

may begin their consideration with either prong."  <u>Spady v. Bethlehem Area Sch. Dist.</u>, 800 F.3d

633, 637 (3d Cir. 2015) (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (3d Cir. 2015)).

"A right is 'clearly established' for these purposes when its 'contours . . . [are]

sufficiently clear that a reasonable official would understand that what he is doing violates that

right.'"  <u>Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.</u>, 877 F.3d 136, 142 (3d Cir. 2017)

(alteration in original) (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999)).  "It is not enough

that the right is defined at a high level of generality; rather, '[t]he dispositive question is whether

the violative nature of <u>particular</u> conduct is clearly established.'"  <u>Id.</u> (alteration in original)

(internal quotation marks omitted) (quoting <u>Mullenix v. Luna</u>, 577 U.S. 7, 12 (2015)).  As

instructed by the United States Court of Appeals for the Third Circuit, when examining whether

a constitutional right is clearly established, the Court must "look first for 'applicable Supreme

Court precedent[]'" and, if there is none, the Court "consider[s] whether there is a case of

controlling authority in [its] jurisdiction or a 'robust consensus of cases of persuasive authority'

in the Court of Appeals [that] could clearly establish a right for purposes of qualified immunity."

<u>See</u> <u>id.</u> (fourth alteration in original) (quoting <u>Mammaro v. N.J. Div. of Child Prot. &</u>

<u>Permanency</u>, 814 F.3d 164, 169 (3d Cir. 2016), <u>as amended</u> (Mar. 21, 2016)).  "The authority

need not be 'directly on point, but existing precedent must have placed the statutory or

constitutional question beyond debate.'"  <u>Id.</u> (quoting <u>al-Kidd</u>, 563 U.S. at 741).

### 2.     Arguments of the Parties

#### a.     Defendants' Arguments in Favor of Summary Judgment

In arguing that they are entitled to summary judgment as to Plaintiff's excessive force

claims, Defendants argue that any force used against Plaintiff was objectively reasonable under

the circumstances.  (Doc. No. 30 at 9.)  Regarding the claim against Amarose, Defendants argue

that Amarose is entitled to summary judgment because the only physical force used by him was to hold Plaintiff's arm to assist in escorting her.  (Doc. Nos. 30 at 10; 31 ¶ 33.)  Regarding the claim against Tremaine, Defendants argue that, while Tremaine did use force in bringing Plaintiff to the ground during the traffic stop, the force was reasonable under the circumstances or, alternatively, Tremaine is entitled to qualified immunity.  (Doc. No. 30 at 10.)

Defendants state that, from the perspective of the troopers, they were trying to effectuate the arrest of an individual suspected of DUI.  (Doc. No. 30 at 13.)  Both Defendants were able to feel Plaintiff's arms and muscles tighten up after Plaintiff turned around.  (Doc. No. 31 ¶ 27.)  Defendants argue that the "balling of fists and tensing of the body" are considered "pre-assault indicators" in State Trooper training.  (Doc. Nos. 30 at 6, 13; 31 ¶ 47.)  Because he felt Plaintiff tense her arm and saw her ball her fist, Tremaine took Plaintiff to the ground via armbar.  (Doc. Nos. 30 at 13; 31 ¶¶ 28, 31.)  In his deposition, Tremaine claims that he did not know that Plaintiff was injured when she hit the ground.  See (Doc. No. 31-4 at 18, Tr. 60:13–18).  Additionally, Tremaine did not intentionally injure Plaintiff nor was there any other intentional physical interaction such as a punch or kick.  (Doc. No. 31 ¶ 32.)  Because of the circumstances and the pre-assault indicators, Defendants assert that Tremaine's use of force was objectively reasonable.  (Doc. No. 30 at 13.)

Defendants maintain that, even if there is a dispute as to whether Tremaine used excessive force, "it cannot be held that bringing an individual to the ground when they are perceived to be actively resisting arrest, and without any other physical force used, violates any clearly established law."  See (Doc. No. 30 at 14–15) (citing Spady, 800 F.3d at 638).  Therefore, Defendants argue that Tremaine is entitled to qualified immunity for his actions during the traffic stop.

**b.      Plaintiff's Arguments in Opposition to Summary Judgment**

In response to Defendants' arguments, Plaintiff maintains that there are "substantial" genuine disputes of material facts.  (Doc. No. 38 at 4.)  Plaintiff argues that Defendants never said, "you are being placed under arrest," "you are under arrest," or "put your hands behind your back" before force was used.  (Id. at 10, 12, 25–27.)

Additionally, Plaintiff points to the undisputed fact that approximately two (2) to three (3) seconds elapsed between Defendants' instruction to turn around and Defendants' act of forcing her to turn around.  See (Doc. Nos. 32 at 00:20:00–00:20:08; 38 at 9).  Plaintiff cites to Amarose's deposition testimony wherein he states that a suspect will typically take five (5) to seven (7) seconds to turn around and may take even longer when delayed if being investigated for intoxicated driving.  See (Doc. Nos. 31-3 at 32–33, Tr. 117:9–118:3; 38 at 10).  Plaintiff argues that force was unnecessary, and Defendants could have handcuffed her without taking her to the ground.[10]  (Doc. No. 38 at 12–13.)  Plaintiff maintains that there is a genuine dispute of material fact as to whether Defendants' use of force in the takedown was objectively reasonable under the circumstances and that a jury could conclude that Plaintiff's constitutional rights were violated.  (Id. at 27.)  On that basis, Plaintiff argues that the Court should deny Defendants' motion for summary judgment.  (Id.)

**3.      Whether Defendants are Entitled to Summary Judgment on Plaintiff's Excessive Force Claims (Count I)**

The conduct in question here is the alleged use of excessive force in violation of Plaintiff's Fourth Amendment rights (1) during a traffic stop and (2) while Plaintiff was escorted

---

[10]   Plaintiff cites to Amarose's deposition wherein he states that he believes he could have handcuffed Plaintiff without Tremaine taking her to the ground.  (Doc. Nos. 38 at 13, 27; 39-4 at 41, Tr. 150:25–151:9.)

through the barracks parking lot.  The Court also considers Tremaine's argument that he is

entitled to qualified immunity as to each claim.  To analyze these claims, the Court will discuss

the two incidents separately.

### a.    Traffic Stop and Arrest

### (1)    Claims Against Amarose

Pursuant to the Graham Factors, used to determine the objective reasonableness of a

particular use of force, a court must evaluate the severity of the crime at issue; whether the

suspect poses an immediate threat to the safety of the officers or others; and whether the suspect

is actively resisting arrest or attempting to evade arrest by flight.  See Graham, 490 U.S. at 397.

The video of the incident (MVR) is instructive to this Court's analysis in this regard.  See Scott,

550 U.S. at 380–81 (holding that the Court must view the facts in the light depicted by the

videotape).

As stated supra, troopers are privileged to commit battery incident to a lawful arrest.  See

Edwards, 860 F.2d at 572.  Amarose held Plaintiff's arm behind her back as a way to effect a

proper and legal arrest for driving under the influence, and did not take Plaintiff down—thus, the

analysis for the use of excessive force concerns Tremaine, not Amarose.  On the MVR,[11] it is

apparent that there is a delay in getting the handcuffs on Plaintiff as Amarose states "give me

your [expletive] hand"[12] while the troopers struggle with Plaintiff on the ground.  (Doc. No. 32

at 00:20:20–00:20:30.)   Even if Amarose yanked or pulled on Plaintiff's arm to handcuff her, as

---

[11]   When there is videotaped evidence, the court is obliged to consider it when determining
whether there is a genuine dispute of material fact, and the Court must view the facts in the light
depicted by the videotape.  See Scott, 550 U.S. at 380–81.

[12]   See (Doc. No. 32 at 00:20:23–00:20:26).

alleged by Plaintiff, his action does not rise to the level of excessive force.  See Graham, 490

U.S. at 396 (holding that "[n]ot every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers, . . . violates the Fourth Amendment").  Because the undisputed

facts demonstrate that Amarose did not engage in the use of excessive force during the traffic

stop and arrest of Plaintiff, the Court will grant Defendants' summary judgment motion as a

matter of law as to the excessive force claim asserted against Amarose (Count I) related to

Plaintiff's arrest.[13]

### (2)    Claims Against Tremaine

The Court turns to Tremaine's actions during the traffic stop and arrest of Plaintiff.  "To

prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure

occurred and that it was unreasonable under the circumstances."  Lamont v. New Jersey, 637

F.3d 177, 182–83 (3d Cir. 2011).  A seizure occurs whenever an officer restrains the freedom of

a person to walk away.  See Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2020).  There is

no dispute that a seizure occurred here—the question is whether it was reasonable.

The Court's assessment of the Graham Factors weighs against Defendants' argument that

Tremaine's use of force was necessarily warranted under the circumstances.  Viewing the facts

in light most favorable to Plaintiff and in the light depicted by the videotape, there is a genuine

dispute of material fact as to whether Tremaine engaged in excessive force when taking Plaintiff

down.  A reasonable jury could conclude that there was a violation of Plaintiff's right to be free

---

[13]  Because the Court will grant Defendants' summary judgment motion on Count I against
Amarose because he did not engage in the use of excessive force during Plaintiff's arrest, the
Court need not address whether he is entitled to qualified immunity.

from unreasonable force.  The <u>Graham</u> Factors[14] support this conclusion because Plaintiff did not

pose an immediate safety threat and was not trying to flee.  While Plaintiff argued with

Defendants throughout the traffic stop as seen on the MVR, Plaintiff did not actively resist or

attempt to evade arrest.  There is a genuine dispute of material fact as to whether Tremaine's

takedown was warranted within seven (7) seconds of Tremaine's order to turn around.  It is not

the role of the Court to decide whether Tremaine's action was objectively reasonable under the

Fourth Amendment—that is a question for the factfinder.  <u>See</u> <u>Rivas</u>, 365 F.3d at 198 (stating

that the "reasonableness of the use of force is normally an issue for the [factfinder]").

Therefore, the Court will deny Defendants' motion for summary judgment as to Plaintiff's claim

of excessive force against Tremaine on the basis that the force used by him was objectively

reasonable as a matter of law.

Tremaine argues, as an affirmative defense, that he is entitled to qualified immunity and

thus the Court should grant Defendants' motion for summary judgment on this basis as well.

There is no dispute that Tremaine is considered to be a government official under the doctrine of

qualified immunity as he is a Pennsylvania State Trooper.  <u>See</u> <u>Orsatti</u>, 71 F.3d at 483 (stating

that police officers are government officials accorded qualified immunity).  As set forth more

fully <u>supra</u>, a qualified immunity analysis considers (1) "whether a constitutional right would

have been violated on the facts alleged", and (2) "whether the right was clearly established."  <u>See</u>

<u>Saucier</u>, 533 U.S. at 200.

---

[14]   As discussed <u>supra</u>, the <u>Graham</u> Factors are "the severity of the crime at issue"; "whether the
suspect poses an immediate threat to the safety of the officers or others"; and "whether the
suspect is actively resisting arrest or attempting to evade by flight."  <u>See</u> <u>Graham</u>, 490 U.S. at
396.

Regarding the first prong of the qualified immunity analysis—whether a constitutional violation occurred—the Court concludes that, viewing all evidence of record in the light most favorable to Plaintiff, and construing all inferences in her favor, a reasonable factfinder could find that Tremaine's takedown of Plaintiff was unreasonable.  Accordingly, the Court must next "decid[e] if the particular right outlined in [Plaintiff's complaint] was clearly established at the time of [her arrest]."  See Clark v. Coupe, 55 F.4th 167, 181 (3d Cir. 2022).  In doing so, the Court must consider "whether the state of the law when the offense occurred gave the [Officer Defendants] fair warning that their conduct violated [Plaintiff's] [Fourth] Amendment right[s]."  See id. (internal quotation marks omitted).  "To determine whether such 'fair warning' existed," the Court must "search first for 'factually analogous' cases in the Supreme Court, and then turn [its] inquiry to whether 'binding opinions from [the Third Circuit]' were in existence."  See id. (quoting Peroza-Benitez v. Smith, 994 F.3d 157, 165 (3d Cir. 2021)).  If "neither source provides relevant caselaw, [the Court] consider[s] whether a robust consensus of cases of persuasive authority in the Court of Appeals could clearly establish a right for purposes of qualified immunity," and the Court "may also take into account district court cases."  See id.  (internal quotation marks omitted).

The above framework requires the Court to first "identify the specific right [Plaintiff] allege[s] was violated."  See id.  "This requires [the Court] to frame the right 'in light of the specific context of the case, not as a broad general proposition.'"  Id. (quoting Peroza-Benitez, 994 F.3d at 165).  Although a "right must be defined with a high degree of specificity to be clearly established," see Dennis v. City of Phila., 19 F.4th 279, 288 (3d Cir. 2021), "state officials can still receive fair warning that their conduct is violative even in 'novel factual

19

circumstances' never previously addressed in caselaw." See Clark, 55 F.4th at 182 (quoting

Hope v. Pelzer, 536 U.S. 730, 741 (2002)).

Here, based on the allegations in Plaintiff's complaint, the particular conduct at issue is

Tremaine's takedown of Plaintiff in order to arrest her.  Plaintiff alleges that Defendants engaged

in "excessive, unnecessary, and unreasonable force, such force being the abusive and excessive

handling of Plaintiff, when inexplicably forcing the Plaintiff onto the ground . . . ."  (Doc. No. 1

¶ 109.)  "Viewing these allegations in their totality," see Clark, 55 F.4th at 182, the Court defines

the right allegedly violated by Defendants as follows: the right to be free from excessive force

during arrest for driving under the influence.  See id. at 181 (stating that a district court must note

the right violated with "specificity"); see also Dennis, 19 F.4th at 288 (holding that a right must

be defined "with a high degree of specificity to be clearly established"); Dull v. West Manchester

Twp. Police Dept., 604 F. Supp. 2d 739, 749 (M.D. Pa. 2009) (stating that "[e]very citizen has a

Fourth Amendment right to be free from excessive force during lawful arrests").

In "determining whether this articulated right was clearly established at the time" of the

Officer Defendants' conduct, the Court must "broaden the scope beyond determining whether

'the very action in question has been held unlawful.'"  See Clark, 55 F.4th at 182 (quoting

Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  "The Supreme Court does not require that

earlier cases share the same or even similar facts for a right to be deemed clearly established; it is

enough that the prior cases are 'factually analogous.'"  Id. (quoting Peroza-Benitez, 994 F.3d at

165).  The inquiry into analogous case law similarly requires the Court to "take[] a broad view of

what constitutes an established right of which a reasonable person would have known."  See id.

(citing Peroza-Benitez, 994 F.3d at 166).

Undertaking this inquiry, the Court notes at the outset that Plaintiff has not pointed to any authority, either in the Supreme Court or the Third Circuit, involving the same facts alleged in this case. The Court's task is to look to factually analogous precedent to determine whether Tremaine had fair warning that his conduct, as alleged in Plaintiff's complaint, was unlawful. As discussed below, there is ample authority upon which to conclude that Tremaine had such fair warning.

As a preliminary matter, the Court's determination as to "whether it would be clear to a reasonable officer that [the Officer Defendants'] conduct was unlawful in the situation [they] confronted" involves an "examination of the crime at issue"—driving under the influence. See Gilles v. Davis, 427 F.3d 197, 203–04 (3d Cir. 2005) (internal quotation marks omitted). Under Pennsylvania law, driving under the influence is defined, in relevant part,[15] as:

> (a)  General impairment.--
> (1)  An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.
>
> . . .
>
> (c)  Highest rate of alcohol.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

See 75 Pa. C.S.A. § 3802(a)(1), (c). Plaintiff pleaded guilty to 75 Pa. C.S.A. § 3802(c). (Doc. No. 31-2). The penalty for 75 Pa. C.S.A. § 3802(c) is as follows:

> (1)  For a first offense, to:
> (i)  undergo imprisonment of not less than 72 consecutive hours;
> (ii)  pay a fine of not less than $1,000 nor more than $5,000;

---

[15]   The police criminal complaint states that Plaintiff violated 75 Pa. C.S.A. § 3802(a)(1) and 75 Pa. C.S.A. § 3802(c), among other things. (Doc. No. 31-2 at 13–18.)

(iii)  attend an alcohol highway safety school approved by the department; and
(iv)  comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

See 75 Pa. C.S.A. § 3804(c)(1).  Plaintiff was sentenced to six (6) months' probation.  (Doc. No. 31-2 at 27.)  Plaintiff's offense is a misdemeanor "for which the individual may be sentenced to a term of imprisonment of not more than six months and to pay a fine under section 3804."  See 75 Pa. C.S.A. § 3803(b)(2).

The Court must determine whether Tremaine, by taking Plaintiff to the ground in order to effectuate an arrest after Plaintiff failed all four sobriety tests, violated a clearly established right. The Third Circuit held that there "is no question that . . . the right to be free from arrest except on probable cause[] was clearly established."  See Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995).  Probable cause to arrest "exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested."  See id. at 482.  Courts should make their probable cause determination on the "totality of the circumstances . . . [which means] that a court should not isolate pieces of evidence when it determines whether there was probable cause for a prosecution."  See Halsey v. Pfeiffer, 750 F.3d 273, 301–02 (3d Cir. 2014) (citation omitted).  Plaintiff does not contest the existence of probable cause and the totality of the circumstances illustrates that Defendants had probable cause to arrest her.  Based on Plaintiff's driving prior to the traffic stop, her admission that she had been drinking that evening, her failure of numerous field sobriety tests, her demeanor during the traffic stop, and her breathalyzer reading, there was probable cause to arrest Plaintiff for driving under the influence.  See (Doc. No. 31-2 at 7, 19).

In <u>El v. City of Pittsburgh</u>, 975 F.3d 327, 339 (3d Cir. 2020), the Third Circuit held that a suspect who had been grabbed and slammed into a wall then into the pavement had a clearly established right not to be subjected to such force, as the suspect's alleged crime was not serious, he was not armed, and he posed no immediate threat and did not resist.  See <u>El</u>, 975 F.3d at 339. The Third Circuit stated that "an unarmed individual who is not suspected of a serious crime— including one who is verbally uncooperative or passively resists the police—has the right not to be subjected to physical force such as being grabbed, dragged, or taken down."  See <u>id.</u> at 340. Driving under the influence demonstrates a "serious lack of concern for public safety," but it does not rise to the level of a serious crime because Pennsylvania classifies the crime as a misdemeanor and because the minor nature of the crime.  See <u>Zedonis v. Lynch</u>, 233 F. Supp. 3d 417, 431 (M.D. Pa. 2017) (concluding that driving under the influence is not a serious crime). Plaintiff did not appear armed nor was there an indication that she would attempt to flee. However, both Defendants indicate that their impression of Plaintiff was that she was resisting arrest and was uncooperative.  (Doc. No. 31 ¶ 31.)

"In light of a clearly established right, district courts tend to deny qualified immunity when the reasonableness of the force used is factually disputed."  <u>Guthrie v. Guthrie</u>, 216 F. Supp. 3d 590, 596 (W.D. Pa. 2016).  Due to genuine disputes of material fact as discussed <u>supra</u>, the Court finds that this is not the appropriate time in the proceedings to resolve the issue of qualified immunity, especially because of the broad protection qualified immunity affords a government official.  See <u>Jackson v. City of Pittsburgh</u>, 688 F. Supp. 2d 379, 401 (W.D. Pa. 2010) (denying qualified immunity on excessive force claim in a factually disputed case where, under the plaintiff's version of the facts, officers used force against the unarmed plaintiff who did not exert any threats toward the officers); <u>see also</u> <u>Noble v. City of Camden</u>, 112 F. Supp. 3d

208, 228 (D.N.J. 2015) (denying qualified immunity on excessive force claim in a factually

disputed case where the plaintiff alleged the officer beat the restrained, unarmed plaintiff).

Qualified immunity for this excessive force claim cannot be resolved at this stage of the

proceeding when there are disputed material facts regarding the interaction.  See Guthrie, 216 F.

Supp. 3d at 596 (denying summary judgment based on qualified immunity because "[w]e cannot

find undisputed facts eliminating the hazy border between excessive and acceptable force").  If a

reasonable factfinder were to credit Plaintiff's testimony regarding the takedown (as discussed

supra), that finding would support the conclusion that Tremaine violated Plaintiff's clearly

established right, and therefore the Court cannot conclude that Tremaine is entitled to qualified

immunity at this time.  See Suarez v. City of Bayonne, 566 F. App'x 181, 186–87 (3d Cir. 2014)

(unpublished) (stating that were a factfinder to credit the plaintiff's testimony, the factfinder

could reasonably find that the defendants employed excessive force under clearly established

law).  The Third Circuit Model Jury Instructions (Civil) Comment to 4.7.2 (Section 1983 –

Affirmative Defenses – Qualified Immunity) explains as follows with regard to qualified

immunity and the jury's role as factfinder:

> Questions relating to qualified immunity should not be put to the jury "routinely";
> rather, "[i]mmunity ordinarily should be decided by the court long before trial."
> Hunter v. Bryant, 502 U.S. 224, 228 (1991) (per curiam).  If there are no disputes
> concerning the relevant historical facts, then qualified immunity presents a question
> of law to be resolved by the court.

> However, "a decision on qualified immunity will be premature when there are
> unresolved disputes of historical fact relevant to the immunity analysis."  Curley v.
> Klem, 298 F.3d 271, 278 (3d Cir. 2002) ("Curley I"); see also Reitz v. County of
> Bucks, 125 F.3d 139, 147 (3d Cir. 1997).  Material disputes of historical fact must
> be resolved by the jury at trial.  The question will then arise whether the jury should
> decide only the questions of historical fact, or whether the jury should also decide
> the question of objective reasonableness.  See Curley I, 298 F.3d at 178 (noting that
> "the federal courts of appeals are divided on the question of whether the judge or
> jury should decide the ultimate question of objective reasonableness once all the
> relevant factual issues have been resolved").  Some Third Circuit decisions have

suggested that it can be appropriate to permit the jury to decide objective reasonableness as well as the underlying questions of historical fact.  See, e.g., Sharrar v. Felsing, 128 F.3d 810, 830–31 (3d Cir. 1997) (noting with apparent approval that the court in Karnes v. Skrutski, 62 F.3d 485 (3d Cir. 1995), "held that a factual dispute relating to qualified immunity must be sent to the jury, and suggested that, at the same time, the jury would decide the issue of objective reasonableness").  On the other hand, the Third Circuit has also noted that the court can "decide the objective reasonableness issue once all the historical facts are no longer in dispute.  A judge may use special jury interrogatories, for instance, to permit the jury to resolve the disputed facts upon which the court can then determine, as a matter of law, the ultimate question of qualified immunity."  Curley I, 298 F.3d at 279.  And, more recently, the court has suggested that this ultimate question must be reserved for the court, not the jury.  See Carswell v. Borough of Homestead, 381 F.3d 235, 242 (3d Cir. 2004) ("The jury . . . determines disputed historical facts material to the qualified immunity question . . . . District Courts may use special interrogatories to allow juries to perform this function . . . . The court must make the ultimate determination on the availability of qualified immunity as a matter of law.").

See Third Circuit Model Jury Instructions – Civil § 4.7.2 cmt.  "Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."  Curley I, 298 F.3d at  278.

There are disputed facts relevant to a qualified immunity determination that preclude the resolution of Count I against Tremaine on qualified immunity grounds in advance of trial.  Accordingly, the Court is unable to conclude—as a matter of law—that Tremaine is entitled to qualified immunity at this time.  Thus, the Court will deny Defendants' motion for summary judgment as a matter of law on the excessive force claim asserted against Tremaine (Count I) during Plaintiff's arrest.

**b.    Escorting of Plaintiff in Barracks Parking Lot**

Defendants have shown that there is an absence of evidence to support Plaintiff's claims regarding the alleged use of excessive force in escorting her throughout the hospital and in the

parking lot.[16]  The burden then shifts to Plaintiff to show that there is sufficient evidence to establish the existence of an element essential to her claim.  See Celotex, 477 U.S. at 322.  The evidence cannot be merely colorable, conclusory, or speculative to defeat a motion for summary judgment.  See Anderson, 477 U.S. at 249–50.  A court is not "required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."  See Hammonds v. Collins, No. 12-cv-00236, 2016 WL 1621986, at *3 (M.D. Pa. Apr. 20, 2016).   In fact, "mere conclusory allegations" in a complaint or "self-serving testimony" in a sworn statement "cannot be used to obtain or avoid summary judgment when uncorroborated . . . ."  See Hubert v. Luscavage, No. 21-cv-01523, 2023 WL 4306753, at *3 (M.D. Pa. June 30, 2023) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)); see also Bhatla v. U.S. Capital Corp., 990 F.2d 780, 787 (3d Cir. 1993) (holding that "to defeat a motion for summary judgment, a party cannot rest simply on the allegations in the pleadings").  A plaintiff cannot rely on "bare assertions" to resist summary judgment.  See Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).

Plaintiff posits that Defendants forced her to walk quickly through the parking lot, as they were escorting her in handcuffs.  (Doc. No. 31-5 at 10, Tr. 27:12–28:8.)  Plaintiff then claims that she tripped in the parking lot and Defendants pushed her up against the police vehicle.  (Id. at 13–14, Tr. 39:7–42:19.)   However, Plaintiff has provided no evidence to support this contention other than her own deposition testimony, and her argument is "therefore based solely on the allegations of her complaint and conclusory unsupported arguments in her brief."  See Giovanetti v. Dept. of Corr., No. 17-cv-01787, 2020 WL 4924545, at *4 (M.D. Pa. Aug. 21, 2020); see also Hubert, 2023 WL 4306753, at *3 (stating that mere conclusory allegations cannot

---

[16]   The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  See Conoshenti, 364 F.3d at 145–46.

survive summary judgment).

Additionally, from the photo taken at Franklin CJ (Doc. No. 31-6 at 2), it is difficult to ascertain what injuries Plaintiff allegedly suffered from the escort.  The appearance of blood between her mouth and nose as well as scrape around her left eye are consistent with Plaintiff's injuries from the takedown—injury to her lip, her front tooth crown became mobile, and she had abrasions on her face.  See (Doc. No. 31 ¶ 34).  Plaintiff has also not presented evidence to support that the handcuffing resulted in damages that required medical attention.[17]  See Gilles v. Davis, 427 F.3d 197, 207–08 (3d Cir. 2005) (finding that a plaintiff's claims of pain and medical damages insufficient to establish excessive force, in part, because the plaintiff did not seek or receive medical treatment after the fact).

As discussed supra, troopers are privileged to use force in escorting and arresting individuals.  See Edwards, 860 F.2d at 572.  Defendants' use of force in escorting Plaintiff in handcuffs is privileged as Plaintiff was in custody.[18]  Plaintiff has not pointed to evidence sufficient to permit a reasonable factfinder to conclude that Defendants engaged in excessive force in the barracks parking lot.  See Giovanetti, 2020 WL 4924545, at *4 (holding that a series of quotes from a deposition was insufficient to defeat summary judgment); see also D.E. v. Central Dauphin School Dist., 765 F.3d 260, 268–69 (3d Cir. 2014) (stating that "[t]he non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials of his pleadings" and that "[b]are assertions, conclusory allegations, or suspicions will

---

[17]   According to her deposition testimony, Plaintiff claims she received medical attention for her anxiety and high blood pressure upon arrival at Franklin CJ.  (Doc. No. 31-5 at 15, Tr. 47:17–48:11.)

[18]   See (Doc. No. 31-4 at 53, Tr. 199:2–14) (where Officer Tremaine states that use of force in escorting someone in custody is necessary because the person in custody is handcuffed).

not suffice"). Accordingly, the Court will grant summary judgment for both Defendants as to

Plaintiff's excessive force claims (Count I) based on the escort of Plaintiff in the barracks

parking lot.[19]  In light of the Court's determination that Plaintiff has failed to create a genuine

dispute of fact as to Plaintiff's excessive force claims based on the escort, there cannot be a

viable failure to intervene claim on <u>those specific grounds</u>.  <u>See</u> <u>Bodnar v. Wagner</u>, No. 07-cv-

02038, 2010 WL 5607, at *4 (M.D. Pa. Jan. 5, 2010) (stating that "if there was no use of

excessive force . . . then there could likewise be no claim for failing to intervene").  Therefore,

the following analysis of Defendants' motion as to Plaintiff's failure to intervene claims will

focus only on the traffic stop.

### B.        Plaintiff's Fourth Amendment Claims of Excessive Force (Count I)

To analyze Defendants' motion seeking summary judgment on Plaintiff's claims for the

failure to intervene during her traffic stop and arrest (Count III), the Court will discuss each

Defendant separately.  However, the Court's discussion of Tremaine will be brief because—as a

matter of law—a defendant alleged to have used excessive force cannot fail to intervene in their

own alleged conduct.  <u>See</u> <u>Degroat v. Felsman</u>,  No. 16-cv-01186, 2019 WL 652345, at *4 (M.D.

Pa. Feb. 15, 2019) (citing <u>Flint v. City of Milwaukee</u>, 91 F. Supp. 3d 1032, 1063 (E.D. Wis.

2015)) (noting that an officer cannot intervene in his own constitutional violation).

### 1.        Legal Standard Applicable to Failure to Intervene Claims

A police officer has a duty to "take reasonable steps to protect a victim from another

officer's use of excessive force."  <u>See</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 650 (3d Cir. 2002).

---

[19]   In light of the Court's determination that Plaintiff has failed to create a genuine dispute of
fact as to Plaintiff's excessive force claims based on the escort, the Court need not address
Defendants' argument that they are entitled to summary judgment based on qualified immunity.

"However, an officer is only liable if there is a realistic and reasonable opportunity to intervene."
Id. at 651 (citing Putman v. Gerloff, 639 F.2d 415, 423–24 (8th Cir. 1981) (holding that liability exists only if the non-intervening officer saw the alleged excessive use of force or had time to reach the offending officer). The law is clear that "approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force . . . . Such silence is an endorsement of the constitutional violation resulting from the illegal use of force." See Mensinger, 293 F.3d at 651. When an incident is momentary, the "brevity" of the incident may defeat a failure to intervene claim. See Ricks v. Shover, 891 F. 3d 468, 479 (3d Cir. 2018). "Naturally enough, duration of the incident is key to determining whether there was a reasonable opportunity [to intervene]." El, 975 F.3d at 335. Duration of the incident refers to the use of force, not the duration of an entire interaction between police and an individual. See id. at 336 (stating that the duration refers to the act of excessive force).

As noted supra, an officer cannot be liable for failure to intervene when they are directly involved in the alleged excessive use of force because an officer cannot "intervene in his own constitutional violation." See Degroat, 2019 WL 652345, at *4 (citing Flint, 91 F. Supp. 3d at 1063.

### 2. Arguments of the Parties

In arguing that they are entitled to summary judgment on Plaintiff's failure to intervene claims, Defendants argue that, as a matter of law, Tremaine cannot have intervened in his own alleged excessive use of force and that Amarose did not have a reasonable amount of time to intervene in Tremaine's takedown of Plaintiff. (Doc. No. 30 at 8.) Specifically, Defendants argue that it was a period of only seven (7) seconds from when Plaintiff was ordered to turn around to her being taken to the ground. (Doc. Nos. 30 at 8, 12; 32 at 00:20:00–00:20:07.)

In response, Plaintiff argues that each Defendant should have known that the other was engaging in excessive force and should have intervened to limit or stop the alleged excessive use of force.  (Doc. No. 38 at 17.)  She argues that Amarose failed to intervene when Tremaine "violently grab[bed] Plaintiff and sp[u]n her around" and slammed her to the ground via armbar another five (5) seconds later.  (Id. at 22.)  On the MVR, Amarose tells Tremaine to "get off" and that he "got it" as the two handcuffed Plaintiff on the ground—words that Plaintiff argues are insufficient intervention.  (Doc. Nos. 32 at 00:20:08–00:20:11; 38 at 22.)

### 3.   Whether Defendants are Entitled to Summary Judgment as to Plaintiff's Fourth Amendment Claims of Failure to Intervene (Count III)

As noted supra, there is no need to address the escort of Plaintiff because the Court has already concluded that as a matter of law, Defendants did not use excessive force during the escort of Plaintiff (Count I), and therefore, there is no viable claim for a failure to intervene as to the escort.  As to the force used by Tremaine in arresting Plaintiff, the law is clear that, when a police officer is engaging in alleged excessive force, they cannot simultaneously be liable for a failure to intervene claim—common sense dictates that an officer "cannot intervene in his own constitutional violation."  See Degroat, 2019 WL 652345, at *4 (citing Flint, 91 F. Supp. 3d at 1063).  Therefore, the Court will grant summary judgment for Tremaine on Plaintiff's failure to intervene claim (Count III) as to Plaintiff's traffic stop and arrest.

Amarose, as the other officer on the scene, had little time to intervene in the takedown by Tremaine.  "Liability for failure to intervene requires the plaintiff to establish that the officer has a 'realistic and reasonable opportunity' to assuage the constitutional violation but failed to do so."  Dull, 604 F. Supp. 2d at 749–50 (quoting Mensinger, 293 F.3d at 650).  Seven (7) seconds elapsed between Amarose ordering Dimoff to turn around and Tremaine taking her down.  (Doc.

Nos. 30 at 8, 12; 32 at 00:20:00–00:20:07.)  However, this leaves only a handful of seconds for Amarose to act to intervene.  According to the MVR, it took about two (2) seconds for Tremaine to turn Plaintiff around.  (Doc. No. 32 at 00:20:00–00:20:02.)  There then appears to be about two (2) seconds of struggle with Plaintiff before Tremaine begins to take Plaintiff to the ground. (Id. at 00:20:02–00:20:04.)  This leaves about three (3) seconds for Amarose to have intervened prior to Tremaine's use of force.  (Id. at 00:20:04–00:20:07.)  Tremaine takes Plaintiff down via armbar, basically pulling Amarose down too.  (Id. at 00:20:07–00:20:08.)  The brevity of an incident alone can be sufficient to grant summary judgment if there was not a "realistic and reasonable" opportunity to intervene.  See Degroat, 2019 WL 652345, at *4.

Upon careful consideration of the arguments of the parties, the evidence of record, and all relevant authorities, and construing all reasonable inferences in a light most favorable to Plaintiff,  Plaintiff has failed to point to facts permitting a reasonable factfinder's conclusion that Amarose had a "realistic and reasonable" opportunity to intervene in Tremaine's use of force. Even though Plaintiff argues that Amarose told Tremaine to "get off" after the takedown, this occurred after the alleged use of force, and does not evidence a reasonable opportunity to intervene.  See El, 975 F.3d at 336 (stating that "[t]he question is not whether [Defendant] had an opportunity to intervene in the 'entire incident,' but in [other Defendant]'s use of force, which lasted about five seconds").  Given the speed of the incident, no reasonable factfinder could conclude that Amarose had a realistic and reasonable opportunity to intervene.  See e.g., El, 975 F.3d at 334 (finding that there was no realistic opportunity to intervene in the use of force that lasted five (5) seconds); O'Neill v. Krzeminski, 839 F.2d 9, 11–12 (2d Cir. 1988) (concluding that "[t]he three blows were struck in such rapid succession that [the officer] had no realistic opportunity to attempt to prevent them"); Buchanan v. W. Whiteland Township, No. 08-cv-

00462, 2009 WL 54949, at *4 (E.D. Pa. Jan. 7, 2009) (stating that "[t]he events took place so quickly that there was no realistic or reasonable possibility for [the officers] to intervene to prevent [another officer] from using his taser on Plaintiff"). Accordingly, the Court will grant Defendants' motion for summary judgment on Plaintiff's claims for failure to intervene (Count III).

## IV.    CONCLUSION

For all of the foregoing reasons, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment. An appropriate Order follows.

  s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania